UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MICHAEL WEINBERG,

                           Plaintiff,

           v.

FI DELITY BROKERAGE SERVICES, LLC;
FIDELITY INVESTMENTS;
and EDWARD T. MONACO in his
official and individual capacities,

                        Defendants.

-------------------------------------------------------------X



JUDGE KAPLAN

06 CV 0628

CASE NO. _____

RECEIVED
JAN 2 6 2006
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michael Weinberg, by and through his undersigned counsel, as and for his Complaint in this action against Defendants Fidelity Investments, Fidelity Brokerage Services, LLC (together, "Fidelity" or the "Company") and Edward T. Monaco (collectively, the "Defendants"), hereby alleges as follows:

### NATURE OF THE CLAIMS

1.      This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including their discriminatory treatment and harassment against Plaintiff due to his religion and ethnicity (Jewish) and unlawful retaliation against him after he complained about such unlawful discrimination and harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York State Human Rights Law, New York Executive Law §§ 290 et seq. ("NYSHRL"); and the New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq. ("NYCHRL").

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and 1343(5) as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

4.      Plaintiff Michael Weinberg ("Plaintiff" or "Mr. Weinberg") is a former employee of Defendants Fidelity Brokerage Services, LLC and Fidelity Investments, who resides in the State of New York, Nassau County.  At all relevant times, Mr. Weinberg met the definition of an "employee" under all applicable statutes.

5.      Defendant Fidelity Brokerage Services, LLC is the nation's largest mutual fund and has corporate headquarters located at 82 Devonshire Street F6B, Boston, Massachusetts 02109.  Fidelity Brokerage Services, LLC also maintains offices at 1271 Avenue of the Americas, New York, NY 10020.  At all relevant times, Fidelity Brokerage Services, LLC met the definition of an "employer" under all applicable statutes, and is, and has been, a joint/single employer with Defendant Fidelity Investments.

6.      Defendant Fidelity Investments is the nation's largest mutual fund and has corporate headquarters located at 82 Devonshire Street F6B, Boston, Massachusetts

02109.  Fidelity Investments also maintains offices at 1271 Avenue of the Americas, New York, NY 10020.  At all relevant times, Fidelity Investments met the definition of an "employer" under all applicable statutes, and is, and has been, a joint/single employer with Defendant Fidelity Brokerage Services, LLC.

7.      Defendant Edward T. Monaco ("Monaco") is the Branch Manager and Vice President at the Rockefeller Center Branch of Fidelity, who, upon information and belief, resides in the State of New York, New York County.  At all relevant times, he has held this position and participated directly in the unlawful discrimination, harassment and retaliation committed against Mr. Weinberg and in the unlawful discriminatory employment decisions and actions taken against him.

## ADMINISTRATIVE PROCEDURES

8.      Mr. Weinberg has complied with all statutory prerequisites to filing this action.

9.      On or about April 28, 2005, Mr. Weinberg filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII.  The charge arises out of the same facts alleged herein.

10.     On or about November 3, 2005, Mr. Weinberg received his Notice of Right to Sue from the EEOC.  This action originally was filed within 90 days of Mr. Weinberg's receipt of his Notice of Right to Sue from the EEOC.

11.     Prior to the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the

3

Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

      12.     Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment with Fidelity

      13.     Mr. Weinberg began working for Fidelity in or around January 2001 as an Investment Center Representative (commonly referred to as an "FR2") in the Rockefeller Center Branch office of Fidelity.

      14.     Upon information and belief, since November 2003, Mr. Weinberg was the only Jewish employee in the Rockefeller Branch of Fidelity.

      15.     Fidelity, the nation's largest mutual fund, is a leading provider of investment management, retirement and brokerage services.

      16.     Throughout his employment with Fidelity, Mr. Weinberg consistently met all of the performance goals set for him by the Company and satisfied all of his performance criteria. Mr. Weinberg also was awarded a significant amount of positive feedback from his colleagues and clients.

      17.     As evidence of his aptitude and successes as an Investment Center Representative, Mr. Weinberg was given a top "referral rank" in Fidelity's Rockefeller Center Branch and has successfully completed the Company's training and product knowledge examinations.

18.     Despite his superior qualifications and history of excellent service for the Company, Mr. Weinberg was the only Investor Center Representative with his tenure and experience who did not receive a promotion to FR3 position.

**The Pervasive Religious/Ethnic Discrimination by Defendant Monaco**

19.     Unfortunately, despite Mr. Weinberg's numerous successes working for Fidelity, his employment at the Company was marred by the discrimination and harassment he faced from Defendant Monaco because he is Jewish.

20.     Defendant Monaco is the Branch Manager at the Rockefeller Center Branch of Fidelity and therefore was Mr. Weinberg's direct supervisor.

21.     Since Defendant Monaco began working as Fidelity's Branch Manager at the Rockefeller Center branch in or around January 2003, he consistently subjected Mr. Weinberg to discriminatory treatment and harassment based on his religion and/or ethnicity.

22.     By way of example only, Defendant Monaco only provided Mr. Weinberg with one written review in his time with the Company despite Fidelity's express policy requiring at least one formal written performance per year and despite the fact that the other, non-Jewish employees received their written reviews semi-annually.

23.     Upon information and belief, Mr. Weinberg was the only employee in the Rockefeller Center branch who did not receive a written performance review on a semi-annual basis. Fidelity denied Mr. Weinberg equal performance reviews and opportunities

for promotions and compensation increases despite his objections and complaints about the discriminatory working conditions.

24.    As a direct result of Defendant Monaco's failure to provide Mr. Weinberg with the necessary formal written reviews, Mr. Weinberg did not receive promotions or compensation comparable to other similarly-situated, and even less experienced, non-Jewish employees.

25.    In addition, Mr. Weinberg consistently received lower semi-annual bonuses than every other Investor Center Representative at his level in the Rockefeller Center branch office.

26.    For instance, Brian Burke ("Mr. Burke"), a non-Jewish employee with the Company for only seven months, received larger semi-annual bonuses than Mr. Weinberg, despite having less tenure and similar or even less referral business.

27.    Additionally, Mr. Weinberg was the only Investment Center Representative with his tenure and experience in the Rockefeller Center Branch Office who did not receive a promotion to the FR3 position.

28.    The disparate treatment that Mr. Weinberg was forced to endure has caused him to suffer significant loss of compensation, status, responsibility and career progression, and adversely affected his terms and conditions of employment.

29.    Defendant Monaco subjected Mr. Weinberg to this harmful and hostile conduct due to his religion (Jewish) and with the intent to discriminate against him. Similarly situated non-Jewish employees were not subjected to this type of conduct.

Thus, Mr. Weinberg suffered disparate treatment in the terms and conditions of his employment due to his religion and/or ethnicity.

## Defendant Monaco's Statements and Actions Demonstrate an Anti-Jewish Animus

30.    Defendant Monaco, by virtue of his own statements, has demonstrated a discriminatory bias against Jewish employees.

31.    In or around November 2003, Defendant Monaco terminated the employment of Steven Epstein, the only other Jewish employee at Fidelity's Rockefeller Center branch office who worked directly under Defendant Monaco, without cause.

32.    Shortly thereafter, Mr. Weinberg heard Defendant Monaco state on the telephone, "Jews are not good candidates for promotion at Fidelity."

33.    Disturbed by this rank discriminatory comment, Mr. Weinberg approached Defendant Monaco and asked him whether or not the discriminatory treatment he had been subjected to was a result of the fact that he was Jewish.

34.    Defendant Monaco remained silent in the face of this accusation. Mr. Weinberg responded by stating, "I am sorry you feel that way."

35.    Additionally, Defendant Monaco scheduled a celebratory team outing on Rosh Hashanah, one of the holiest Jewish holidays of the year, despite having been given ample notice by Mr. Weinberg that he could not attend any events on that day due to his observance of the holiday. As a result, Mr. Weinberg was unable to take part in the team outing.

7

**Defendant Monaco Unlawfully Retaliated Against Mr. Weinberg**

36.    In response to Mr. Weinberg's complaints of discriminatory treatment,
Defendant Monaco initiated a campaign of unlawful retaliatory conduct against him.

37.    For example, shortly after Mr. Weinberg confronted Defendant Monaco
about his anti-Semitic behavior and disparate treatment, Defendant Monaco moved Mr.
Weinberg out of his office, to a different floor, and into a cubicle that was adjacent to the
garbage, kitchen and coat closet.

38.    No arrangements were made to transfer Mr. Weinberg's telephone
extension from his office to the cubicle for almost a year despite Mr. Weinberg's
repeated efforts to get this problem rectified.  During that time, Mr. Weinberg was forced
to use his coworkers' telephones and to borrow their offices whenever he needed to make
a telephone call.  Not only was this humiliating, it severely undercut Mr. Weinberg's
productivity as well, which severely affected his compensation and ability to advance
within Fidelity.

39.    Defendant Monaco also issued a series of factually inaccurate and
unjustified warning memos to Mr. Weinberg in an effort to justify disciplining him and
threatening termination of his employment.  These memos contain false allegations of
alleged performance deficiencies that Defendant Monaco had never before mentioned to
Mr. Weinberg.

40.    For instance, Defendant Monaco "mistakenly" emailed Mr. Weinberg a
Notice of Corrective Action after business hours on Friday, January 7, 2005 that

purportedly provided Mr. Weinberg with 30 days to improve his performance or face a Final Written Warning and, eventually, dismissal for non-performance.

41.     This Notice of Corrective Action contained allegations of performance deficiencies that are patently false.  It also referenced completely fabricated assessments and meetings that never occurred, and contained blatant lies regarding Mr. Weinberg's performance.

42.     Defendant Monaco later admitted that Mr. Weinberg should not have been sent the Notice of Corrective Action; but, instead, issued a more formal Written Warning dated January 10, 2005, which purportedly placed Mr. Weinberg on a 60-day performance improvement period.

43.     As part of the sham 60-day performance improvement period, Mr. Weinberg was required to meet privately with Defendant Monaco each week to discuss his performance.

44.     As with the Notice of Corrective Action, the Written Warning contained references to meetings and assessments that never occurred, and set forth alleged performance deficiencies that are contradicted by Mr. Weinberg's stellar performance record while with Fidelity.

45.     These discriminatory disciplinary actions were motivated by Defendant Monaco's intent to retaliate against Mr. Weinberg for asserting his civil rights.

**Defendant Monaco's Discriminatory and Retaliatory Treatment of Plaintiff Worsens**

9

46.     On or about February 23, 2005, Mr. Weinberg, through counsel, sent a letter to David F. Johnson, Vice President – Human Relations at Fidelity, regarding the discrimination, harassment and unlawful retaliation Mr. Weinberg suffered while working at Fidelity, and specifically under Defendant Monaco.

47.     In response to this letter, Defendant Monaco's discriminatory, harassing and retaliatory treatment of Mr. Weinberg significantly worsened.

48.     For example, Defendant Monaco placed Mr. Weinberg on "heightened observation," which required that he account for every minute of his workday, including bathroom breaks, in reprisal for his complaints of discrimination.

49.     Additionally, the meetings Mr. Weinberg was to have on a weekly basis with Defendant Monaco were no longer one on one; but, rather, also included representatives of Human Resources who participated via teleconference. This heightened scrutiny is further evidence of the discriminatory, retaliatory and harassing conduct that Defendants subjected Mr. Weinberg to.

50.     As further evidence that the purported performance improvement period was unwarranted, Defendant Monaco extended it, without justification, for an additional 30 days after the original 60-day period had ended. This was in spite of the fact that Mr. Weinberg received numerous commendations from portfolio managers, other senior investors and even Defendant Monaco himself during the original 60-day period.

51.     This discriminatory and retaliatory extension of the purported performance improvement period was based on the same baseless allegations and conclusions

contained in the original Written Warning. In reality, the continuation of this disciplinary measure was in retaliation for Mr. Weinberg's complaints concerning the unlawful discrimination he faced from Defendants.

52.     Defendant Monaco also provided other non-Jewish employees common benefits that were denied to Mr. Weinberg. For example, on April 5, 2005, Mr. Weinberg requested that he be allowed to use his lunch period on April 6 to attend a previously scheduled doctor's appointment. Defendant Monaco denied Mr. Weinberg's request, ostensibly because that time period constituted "traditionally [Fidelity's] busiest weeks of the year."

53.     However, on the same day that Mr. Weinberg was denied time off, Defendant Monaco permitted another, non-Jewish employee, Joanna Litsas, to leave work shortly after 12:00 p.m. to attend a Yankees baseball game.

54.     Then, on April 15, 2005, Fidelity and Defendant Monaco extended Mr. Weinberg's Written Warning period for yet another 60 days without justification, relying on unsupported allegations that were wholly unrelated to the purported basis for the original discriminatory Written Warning. Defendants never discussed these new purported performance issues with Mr. Weinberg prior to using them as a pretext to justify the second unlawful and retaliatory extension of the Written Warning Period.

55.     Defendant Monaco and Fidelity manufactured these false and misleading bases to justify extending the Written Warning period to create a "record" to support their discriminatory, retaliatory and unlawful threats of further corrective action, including the termination of Mr. Weinberg's employment.

56.     To further evidence the fact that the justifications given for placing Mr. Weinberg on Written Warning status were pretextual and groundless, Fidelity took Mr. Weinberg off Written Warning status on or about June 23, 2005 because his performance, including his knowledge of Fidelity products, demonstrated improvement.

57.     However, at no point during Mr. Weinberg's Written Warning period did he attend any classes or training programs to improve his knowledge of the products that he has been successfully pitching to investors for almost five years and his job performance in fact was no different than it had been prior to the "performance improvement plan."

58.     Most recently, Defendants provided training classes to prepare all other FR2s for promotion to the FR3 position.  Mr. Weinberg was the only FR2 who was not invited to attend the training program.

59.     Shortly after the training program, Mr. Burke, an FR2 who had significantly less tenure, experience and production than Mr. Weinberg, was promoted to FR3.  Mr. Weinberg was not promoted in retaliation for his decision to exercise his right to pursue his claims of employment discrimination against Defendants.

60.     No longer able to withstand Defendants' discriminatory, harassing and retaliatory conduct, on or about January 6, 2006, Mr. Weinberg had no other choice but to resign his employment from Fidelity, and thus was constructively discharged

61.     As a result of Defendants' discriminatory treatment, harassment, retaliation and other unlawful conduct, Mr. Weinberg has suffered, and continues to

12

suffer, substantial monetary and/or economic damages, including but not limited to the loss of past and future income, compensation, job security and other benefits.

62.     As a result of Defendants' discriminatory treatment, harassment, retaliation and other unlawful conduct, Mr. Weinberg has suffered, and continues to suffer, loss of career fulfillment and harm to his career as well as his professional and personal reputation.

63.     As a result of Defendants' discriminatory treatment, harassment, retaliation and other unlawful conduct, Mr. Weinberg has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering.

64.     Defendant's discriminatory treatment, harassment, retaliation and other unlawful conduct were intentional, malicious and/or showed a deliberate, willful and wanton or reckless disregard for Mr. Weinberg and his civil rights under Title VII, NYSHRL and NYCHRL.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Discrimination and Harassment in Violation of Title VII)

65.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 64, inclusive, as if fully set forth herein.

66.     Defendant Fidelity has discriminated against Mr. Weinberg in violation of Title VII by subjecting him to disparate treatment, harassment and a hostile work environment based upon his religion and/or ethnicity.

67.     Fidelity has discriminated against Mr. Weinberg in violation of Title VII by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Mr. Weinberg because of his religion and/or ethnicity.

68.     As a direct and proximate result of Fidelity's unlawful and discriminatory conduct in violation of Title VII, Mr. Weinberg has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits.

69.     As a direct and proximate result of Fidelity's unlawful and discriminatory conduct in violation of Title VII, Mr. Weinberg has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

70.     Fidelity's unlawful and discriminatory actions constitute willful violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

71.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 70, inclusive, as if fully set forth herein.

72.     Defendant Fidelity has violated Title VII by subjecting Mr. Weinberg to retaliation for his complaints of and opposition to Defendants' discrimination.

14

73.     As a direct and proximate result of Fidelity's unlawful and retaliatory conduct in violation of Title VII, Mr. Weinberg has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits.

74.     As a direct and proximate result of Fidelity's unlawful and retaliatory conduct in violation of Title VII, Mr. Weinberg has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

75.     Fidelity's unlawful and retaliatory actions constitute willful violations of Title VII for which Mr. Weinberg is entitled to an award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Discrimination and Harassment in Violation of NYSHRL)

76.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 75, inclusive, as if fully set forth herein.

77.     Defendants Fidelity and Monaco have discriminated against Mr. Weinberg in violation of the New York State Human Rights Law by subjecting him to disparate treatment, harassment and a hostile work environment based upon his religion and ethnicity.

78.     Defendants have discriminated against Mr. Weinberg in violation of the New York State Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that

included, among other things, severe and pervasive harassment of Mr. Weinberg because of his religion and ethnicity.

79.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York State Human Rights Law, Mr. Weinberg has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

80.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York State Human Rights Law, Mr. Weinberg has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

## AS AND FOR A  FOURTH CAUSE OF ACTION
### (Retaliation in Violation of NYSHRL)

81.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 80, inclusive, as if fully set forth herein.

82.    Defendants have violated the New York State Human Rights Law by subjecting Mr. Weinberg to retaliation for his complaints of and opposition to Defendants' discrimination.

83.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the New York State Human Rights Law, Mr. Weinberg has

suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits.

84.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the New York State Human Rights Law, Mr. Weinberg has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Discrimination and Harassment in Violation of NYCHRL)

85.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 84 inclusive, as if fully set forth herein.

86.    Defendants have discriminated against Mr. Weinberg in violation of the New York City Human Rights Law by subjecting him to disparate treatment, harassment and hostile work environment based upon his religion and ethnicity.

87.    Defendants have discriminated against Mr. Weinberg in violation of the New York City Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Mr. Weinberg because of his religion and ethnicity.

88.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York City Human Rights Law, Mr.

Weinberg has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits.

89.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York City Human Rights Law, Mr. Weinberg has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

90.    Defendants' unlawful and discriminatory actions constitute willful violations of in violation of the New York City Human Rights Law for which Mr. Weinberg is entitled to an award of punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL)

91.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 90, inclusive, as if fully set forth herein.

92.    Defendants have violated the New York City Human Rights Law by subjecting Mr. Weinberg to retaliation for his complaints of and opposition to Defendants' discrimination.

93.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the New York City Human Rights Law, Mr. Weinberg has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits.

94.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the New York City Human Rights Law, Mr. Weinberg has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

95.     Defendants' unlawful and retaliatory actions constitute willful violations of in violation of the New York City Human Rights Law for which Mr. Weinberg is entitled to an award of punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Aiding and Abetting Violations of NYSHRL)

96.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 95, inclusive, as if fully set forth herein.

97.     Defendant Monaco is the Branch Manager at the Rockefeller Center Branch of Fidelity and, at all relevant times, was Mr. Weinberg's direct supervisor.  He knowingly and recklessly aided and abetted the unlawful employment practices and/or unlawful discrimination, harassment and retaliation against Mr. Weinberg in violation of the New York State Human Rights Law.

98.     As a direct and proximate result, Mr. Weinberg has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief, including, but not limited to compensatory damages for his severe emotional distress, against Defendant Monaco in his official and individual capacities.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Aiding and Abetting Violations of NYCHRL)

99.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 98, inclusive, as if fully set forth herein.

100.    Defendant Monaco is the Branch Manager at the Rockefeller Center Branch of Fidelity and, at all relevant times, was Mr. Weinberg's direct supervisor.  He knowingly and recklessly aided and abetted the unlawful employment practices and/or unlawful discrimination, harassment and retaliation against Mr. Weinberg in violation of the New York City Human Rights Law.

101.    As a direct and proximate result, Mr. Weinberg has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief, including, but not limited to compensatory damages for his severe emotional distress, against Defendant Monaco in his official and individual capacities.

102.    Defendant Monaco's unlawful discriminatory and retaliatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which Mr. Weinberg is entitled to an award of punitive damages against Defendant Monaco in his official and individual capacities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York, and the City of New York;

B.     An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.     An order directing Defendants to place Mr. Weinberg in the position he would have occupied but for Defendants' discriminatory and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and otherwise unlawful conduct are eliminated and do not continue to affect Mr. Weinberg;

D.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mr. Weinberg for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

E.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mr. Weinberg for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and

anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

      F.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mr. Weinberg for harm to his professional and personal reputation and loss of career fulfillment;

      G.     An award of damages for any and all other monetary and/or non-monetary losses suffered by Mr. Weinberg in an amount to be determined at trial, plus prejudgment interest;

      H.     An award of punitive damages;

      I.     An award of costs that Mr. Weinberg has incurred in this action, as well as Mr. Weinberg's reasonable attorneys' fees to the fullest extent permitted by law; and

      J.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: January 26, 2006
        New York, New York

THOMPSON WIGDOR & GILLY LLP

By: _____

Scott Browning Gilly (SG-6861)
Andrew S. Goodstadt (AG-2760)

350 Fifth Avenue, Suite 5720
New York, NY 10118
Telephone: (212) 239-9292
Facsimile: (212) 239-9001

COUNSEL FOR PLAINTIFF